IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TODD TAYLOR,

Plaintiff,

v.

NATIONAL EXPRESS LLC, DURHAM HOLDING II, LLC, DURHAM SCHOOL SERVICES, LP, HIRERIGHT, LLC, and NW ONSITE DRGU TESTING,

Defendants.

Case No. 3:25-cv-01539-JR

FINDINGS AND RECOMMENDATION

RUSSO, Magistrate Judge:

Plaintiff Todd Taylor moves to file amended negligence claims against defendants HireRight LLC ("HR") and NW Onsite Drug Testing, LLC ("NW") pursuant to Fed. R. Civ. P. 15. For the reasons stated below, plaintiff's motion should be denied.

**BACKGROUND**

Plaintiff is a professional school bus driver. On July 15, 2025, he initiated this action in Multnomah County Circuit Court against his employers – defendants National Express LLC, Durham Holding II, LLC, and Durham School Services, LP (collectively the "Durham Defendants") – and two drug screening companies – HR and NW – for disability discrimination and negligence. In particular, plaintiff alleges:

> On November 17, 2023, Durham Defendants subjected Plaintiff to a random drug and alcohol screening, administered by NW Onsite. During this screening, Plaintiff was asked to provide a urine sample. Plaintiff has a medical history of "shy bladder" and was unable to produce a urine sample after multiple attempts, consuming fluid, and waiting before attempting again. Durham Defendant's designated employer representative ("DER") then placed Plaintiff on unpaid leave and sent him home. On November 28, 2023, the DER instructed Plaintiff to pick up a Shy Bladder Evaluation Form and take that form to his doctor. Plaintiff contacted a physician assistant, who provided documentation that Plaintiff was likely suffering from shy bladder syndrome. The DER then submitted this documentation to HireRight, a business that provides Medical Review Officer ("MRO") services for Durham Defendants, including review of drug and alcohol testing results. HireRight rejected the conclusions presented by Plaintiff's physician assistant because he was not a medical doctor and his evidence was subjective. Neither HireRight nor Durham Defendants took additional action to resolve the question of whether Plaintiff had shy bladder syndrome. In recommending termination of Plaintiff's employment, the DER relied on HireRight's determination that there was no qualified medical reason for Plaintiff's inability to produce urine. On May 6, 2024, HireRight provided Plaintiff with a copy of his test results along with documentation from Durham Defendants relating to the test results.

*Taylor v. Nat'l Express LLC*, 2025 WL 4643993 (D. Or. Dec. 8, 2025), *adopted by* 2026 WL 496495, *1 (D. Or. Feb. 23, 2026) (internal citations omitted).

The Durham Defendants timely removed plaintiff's complaint to this Court pursuant to 28 U.S.C. § 1332. Thereafter, plaintiff moved to remand the case, arguing that diversity jurisdiction was improper because NW is an Oregon company. HR also moved to dismiss under Fed. R. Civ. P. 12(b)(6).

On February 23, 2026, the Court denied plaintiff's motion to remand:

> NW Onsite has been fraudulently joined because there is no possibility that an Oregon court would find that Plaintiff states a cause of action against it. Plaintiff cannot establish a cause of action against NW Onsite for employment discrimination because there can be no allegation that NW Onsite employed Plaintiff.
>
> Plaintiff also cannot establish a cause of action against NW Onsite for negligence. To state a claim for negligence under Oregon law, a plaintiff must show that the defendant (1) owed plaintiff a duty, (2) the duty was breached, and (3) the breach caused the plaintiff harm. Plaintiff cannot establish that a duty was breached by NW Onsite under the circumstances present here. Plaintiff's Complaint alleges that NW Onsite was negligent in failing to provide a Shy Bladder Evaluation Form and by failing to provide an alternative testing method when Plaintiff was unable to produce a sufficient urine sample. Fatal to Plaintiff's motion to remand, however, is that neither of these alleged breaches are of a duty owed to Plaintiff by NW Onsite. The applicable U.S. Department of Transportation regulations place the duty to provide a shy bladder form on the designated employer representative (i.e., the DER), not on the sample collector . . .
>
> The regulations, however, specify that the sample collector is obligated only to give the employee another opportunity to provide a specimen after an initial failure to do so and *based on the employer's instructions*, this can be done using the same specimen type as the original collection or, if the collector is qualified, an alternate specimen. Here, the employer provided no such instructions to the collector . . . Defendants demonstrated that the DER instructed NW Onsite to collect a urine sample and neither instructed nor authorized collection of an alternate specimen. Therefore, any duty to provide an alternative testing method lies with Plaintiff's employer rather than NW Onsite.
>
> Because Plaintiff cannot possibly state a negligence claim against NW Onsite for breaches of duties statutorily prescribed to a different entity, Plaintiff cannot establish a cause of action under the circumstances alleged in the Complaint. Further, this deficiency cannot be cured by granting Plaintiff leave to amend.

*Id.* at *2-3 (internal citations omitted; emphasis in original).

Separately, the Court granted HR's motion to dismiss:

> Pursuant to ORS § 654A.112, the statute under which Plaintiff brings his disability discrimination claim, it is unlawful for any *employer* to refuse to discriminate based on disability. Plaintiff's Complaint fails on its face to establish this element of his claim – that HireRight employed Plaintiff. This is further evidenced by Plaintiff's lack of argument to the contrary in his response to HireRight's motion to dismiss.

> Plaintiff also alleges that HireRight was negligent in failing timely to provide the shy bladder form, failing to confer with plaintiff on the testing results, failing to interview plaintiff before making verification decisions, failing to direct plaintiff to another physician, and failing to timely notify plaintiff of HireRight's duties and responsibilities in reporting positive test results. Because none of these alleged breaches are of duties owed to Plaintiff by HireRight under the circumstances alleged in the Complaint, Plaintiff has failed plausibly to state a claim of negligence against HireRight.

*Id.* at *4 (internal citations omitted; emphasis in original).

**STANDARDS**

Pursuant to Rule 15, leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15. Courts apply Rule 15 with "extreme liberality." *Eminence Capital, LLC v. Aspeon*, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether a motion to amend should be granted, the court generally considers four factors: (1) undue delay; (2) bad faith; (3) futility; and (4) prejudice to the opposing party. *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997) (citation omitted).

These factors are not weighted equally: "futility of amendment alone can justify the denial of a motion [to amend]." *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009). A proposed amendment is futile if it would be immediately "subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). Thus, the proposed complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**DISCUSSION**

Via the proposed amended complaint ("PAC"), plaintiff seeks to "more narrowly define the contours of his previously pleaded negligence claims against" HR and NW. Pl.'s Mot. Am. 3 (doc. 34).

## I. Allegations Relating to HR

The PAC alleges HR "was negligent in one or more of the following particulars":

> a. By providing Plaintiff with inaccurate information as to his obligations, options, and alternatives when he was initially unable to provide a urine sample;
> b. By failing to properly fill out and certify the Federal Drug Testing Custody and Control Form ("CCF");
> c. By failing to identify to the DER (Durham) an acceptable licensed physician;
> d. By providing inaccurate information to Plaintiff as to his obligations, options, and alternatives when he was unable to provide a urine sample for the second time; and,
> e. By characterizing Plaintiff's inability to provide a sample as a positive result instead of inability to provide a sample.

PAC ¶ 44 (doc. 34).

HR opposes plaintiff's motion on futility grounds. Specifically, HR asserts "[t]he first allegation improperly assigns a duty to HireRight (the MRO) that the DOT regulations expressly assign to the DER. The second allegation about the CCF and an alleged 'positive result' lacks support and flatly contradicts the DOT regulations and Plaintiff's allegation that HireRight reported the result as 'refusal to test.' And the third allegation about HireRight's purported provision of inaccurate information contradicts other allegations and does not flow from any DOT regulation." HR's Resp. to Mot. Am. 2 (doc. 36). According to HR, the PAC merely "repackage[s] [and realleges] the same failed legal theories in different words." *Id.*

The Court agrees with HR. "When an employee is unable to produce an adequate sample, the 'shy bladder' regulation, 49 C.F.R. § 40.193 applies." *Lacondeguy v. Adapa*, 2011 WL 9572, *3 (E.D. Cal. Jan. 3, 2011). Pursuant to 49 C.F.R. § 40.193, the collector (here, NW) must provide the employee with an additional opportunity; if unsuccessful, the collector must notify the DER immediately. 49 C.F.R. § 40.193(b)(1)(iv). "As the DER, if the collector informs you that the employee has not provided a sufficient amount of specimen . . . you must, after consulting with the MRO, direct the employee to obtain, within five days, an evaluation from a licensed physician,

acceptable to the MRO, who has expertise in the medical issues raised by the employee's failure to provide a urine [sample.]" 49 C.F.R. § 40.193(c). The referring physician evaluates the employee and makes a recommendation to the MRO. 49 C.F.R. § 40.193(d). The MRO then assesses the physician's recommendation and makes a "determination about whether the employee has a medical condition that has, or with a high degree of probability could have, precluded the employee from providing a sufficient amount of specimen." *Id.*; 49 C.F.R. § 40.193(h).

The Court previously concluded that the duties plaintiff invoked (providing the shy bladder form, directing plaintiff to a physician, and interviewing plaintiff) are assigned by the regulations to the DER, not the MRO. *Taylor*, 2025 WL 4643993 at *5-6 (citing 49 C.F.R. § 40.193(c) and 49 C.F.R. § 40.129)). The same is true of the purported duties now raised by the PAC.

Concerning amended allegation (c), the duty to identify and refer the employee to a licensed physician rests with the DER. 49 C.F.R. § 40.193(c); *see also Lacondeguy*, 2011 WL 9572 at *3 ("[u]pon notice of an employee's inability to produce an adequate sample, *an employer must direct its employee to obtain an evaluation from a licensed physician*") (emphasis added). That is, the plain language of the regulation does not require the MRO to identify an appropriate provider, or direct the DER or employee to one. *See Taylor*, 2025 WL 4643993 at *6 ("it was the DER's duty to provide such direction [about the appropriate medical provider] after consulting with the MRO"); *see also Lacondeguy*, 2011 WL 9572 at *3 (refusing to impose extra-regulatory duties on an MRO "beyond the plain language of the C.F.R.").

Regarding amended allegation (b), plaintiff provides no well-plead factual allegations, such that the Court is left to guess how the CCF was improperly filled out, what information was missing or incorrect, when such deficiencies allegedly occurred, etc. Presuming plaintiff's claim centers on HR's characterization of his "inability to provide a sample as a positive result," he

cannot maintain a negligence claim based on this theory, as his own factual allegations and the applicable regulations contradict his position. PAC ¶ 44(e) (doc. 34). Notably, as both the original complaint and PAC acknowledge, plaintiff obtained documentation surrounding his medical condition from a physician assistant (as opposed to following the DER's instruction to see a licensed physician as the regulations require). *Id.* at ¶¶ 10-15. Because the evaluation was not from a licensed physician with the required expertise, it was "not an adequate basis for determining that a medical condition has, or with a high degree of probability could have, precluded the employee from providing a sufficient amount of specimen," such that HR was required to "[c]heck the 'Refusal to Test' box" on the CCF. 49 C.F.R. § 40.193(d)(2). That is precisely what HR did.[1] PAC ¶¶ 21-22 (doc. 34). Plaintiff's own factual allegations therefore indicate that HR did not report a positive result on the CCF and instead acted in accordance with the regulations.

Finally, plaintiff has not cited to, and the Court is not aware of any authority that imposes employee reporting obligations on the MRO. *See generally* Pl.'s Reply to Mot. Am. (doc. 39). And 49 C.F.R. § 40.193 clearly does not oblige the MRO to provide any information about the "shy bladder" process to an employee, let alone specific information regarding his "obligations, options and alternatives." *Id.* at ¶¶ 44(a), (d) (doc. 34). As a result, the catch-all negligence allegations embodied in paragraphs (a) and (d) also fail to state a plausible claim. This is especially true given

[1] Plaintiff nonetheless maintains in his reply: "The facts establish that the Durham Defendants and HireRight did not direct Plaintiff to an 'acceptable' physician and then used that fact against him. The CCF shows that HireRight elected to report the results as a 'refusal to test' and went even further in reporting the reason on the CCF as 'treat as a positive result' when it could have indicated the possibility of a shy bladder." Pl.'s Reply to Mot. Am. 10-11 (doc. 39). Aside from the fact that, as discussed above, HR had no duty to refer plaintiff to an appropriate medical provider, there are no facts in the PAC intimating the CCF indicated a "positive result"; the well-plead allegations merely reflect the reporting of a "refusal to test."

that plaintiff does not identify what information was supposedly inaccurate. Plaintiff's motion is denied as to HR.

## II. Allegations Relating to NW

The PAC alleges NW "was negligent in one or more of the following particulars":

> a. By providing Plaintiff with inaccurate information as to his obligations, options, and alternatives when he was initially unable to provide a urine sample;
> b. By failing to properly fill out and certify the CCF; and timely providing it to the MRO (HireRight).
> c. By providing inaccurate information to Plaintiff as to his obligations, options, and alternatives when he was unable to provide a urine sample the second time.

PAC ¶ 48 (doc. 34).

Durham Defendants maintain that the proposed NW amendments are futile: "[t]he Motion should be denied because it is a transparent attempt to reopen and relitigate a jurisdictional issue the Court has already decided [and regardless the] proposed amendment attempts to impose on Defendant NW Onsite duties that 49 C.F.R. § 40.193 does not place on a urine specimen collector." Durham Defs.' Resp. to Mot. Am. 4-5 (doc. 37).

Initially, plaintiff is correct that "[t]he Court explicitly recognized [his] legal right to seek amendment" in denying the motion to remand. Pl.'s Reply to Mot. Am. 3 (doc. 38). Via a footnote, the Court stated: "Plaintiff objects that it was improper for Judge Russo to 'dismiss' the claims against NW Onsite without granting Plaintiff leave to amend. The Court's ruling on fraudulent joinder, however, does not foreclose Plaintiff from seeking leave to amend his Complaint, including to replead claims against NW Onsite. If successful, Plaintiff may then file a second motion to remand based on the Amended Complaint." *Taylor*, 2026 WL 496495 at *3 n.1. Nevertheless, the Court made clear that plaintiff could not pursue a negligence claim against NW in the absence of a viable duty. *Id.* at *2-3.

Significantly, plaintiff's amended allegations surrounding NW mirror those related to HR and thus fail for the same reasons. As discussed in Section I, plaintiff does not provide any argument surrounding employee reporting obligations in this context and the relevant regulations do not impose such a duty (although plaintiff does now intimate his negligence claim against NW flows from "a common-law duty to conduct the drug test using reasonable care"). Pl.'s Reply to Mot. Am. 4-5 (doc. 38).

Beyond rehashing the PAC's allegations and applicable legal standard, the entirety of plaintiff's brief surrounding futility contends: "It is undeniable that NW Onsite conducted the urine test at issue and by inference that it communicated with Plaintiff and other parties relating what occurred during the testing process. The subsequent downstream errors can reasonably be traced back to NW Onsite's failures in conducting the testing process, as well as filling out and transmitting forms related to that process and subsequent follow up." *Id.* Accordingly, plaintiff does not meaningfully address the Durham Defendants' opposition. *See, e.g.*, Durham Defs.' Resp. to Mot. Am. 4-7 (doc. 37); *cf. Taylor*, 2026 WL 496495 at *4 ("[a] plaintiff who makes a claim in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss has effectively abandoned his claim") (citation and internal quotations and ellipses omitted)

In any event, the PAC does not actually detail any breach of duty or errors in the testing process, and instead merely (and accurately) reflects a "refusal to test" was reported on the CCF. PAC ¶¶ 21-22 (doc. 34); *see also Taylor*, 2025 WL 4643993 at *4 (concluding "[i]t is not plausible that a faster report would have mitigated this harm and indeed, the report of the failed specimen collection is the alleged impetus behind the harm," and suggesting that the complaint did not indicate any defect in the testing process insofar as NW immediately reported the results to the DER and urged fluids and offered plaintiff another opportunity to test). The only factual allegation

relating to NW is that it administered the test. *See* PAC ¶ 10 (doc. 34) ("NW performed the [random drug and alcohol] screening"). In sum, the proposed amendments are futile.

**RECOMMENDATION**

For the foregoing reasons, plaintiff's Motion to Amend (doc. 34) should be denied. Plaintiff's request for oral argument is denied as unnecessary.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 27th day of July, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge